28 C.C.P.A.(Patents)

### In re SOMES.
### Patent Appeal No. 4404.

Court of Customs and Patent Appeals.
June 9, 1941.

John P. Tarbox, of Philadelphia, Pa. (F. P. Keiper, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, 1 to 11, inclusive, in appellant's application for a patent for an alleged invention relating to "work cylinders" for use in engines, pumps, and the like.

At the time of the oral arguments in this court, counsel for appellant moved to dismiss the appeal as to claims 1 to 8, inclusive. The motion will be granted. Accordingly, the only claims before us for consideration are Nos. 9, 10, and 11. They read:

"9. An article of manufacture comprising a work cylinder for engines and the like having a hardened integral internal layer of substantially uniform depth and in which cylinder a state of optimum autofrettage exists.

"10. An article of manufacture comprising a work cylinder for engines and the like having an internal integral layer of substantially uniform depth hardened and under pressure and of such depth in proportion to total wall thickness as to be in a condition of optimum autofrettage.

"11. An article of manufacture comprising a work cylinder for engines or the like formed of a material hardenable by heat treatment, having a relatively hard internal integral layer between which and the remaining portion a steep gradient of hardness exists."

The reference is: Klopp, 1,892,843, January 3, 1933.

It is claimed that the novel feature in appellant's cylinder is that the inner layer of the bore of the cylinder is hardened to a substantially uniform depth (approximately one-eighth of an inch, as stated in appellant's specification); that "a state of optimum autofrettage exists" in such a cylinder; and that such a cylinder has qualities of high resistance to wear and great strength with minimum weight.

It appears that the hardened inner layer of a cylinder is under compression and the "unhardened outer layers" are under tension, and, as a result, stresses, referred to in the record as "autofrettage," are produced in the cylinder.

Appellant states in his application that the inner internal layer of a cylinder may be hardened by "effecting an extremely rapid rise in temperature," which penetrates "a very short but definite and substantially sharply defined distance from the inner surface into the wall of the cylinder, and immediately and rapidly quenching"; that "*Any known or other form of carrying out such treatment may be utilized, but up to the present time the one method capable of effecting the application of heat in a manner sufficient to produce a cylinder having the qualities above-mentioned, is that of heating by electro-magnetic induction with high frequency alternating current*"; and that, although the principle of autofrettage is well recognized, he is the first, so far as he is aware, to produce a cylinder, hereinbefore described, "*through heat treatment by electro-magnetic induction.*" (Italics ours.)

Appellant discloses an apparatus in which an electro-magnetic induction coil is arranged to be positioned within the cylinder bore in close proximity with the inner surface and extending beyond each end thereof. When the cylinder has been properly heated, the electro-magnetic induc-

tion coil is withdrawn and a quenching liquid is sprayed on the wall of the cylinder.

Appellant further states in his application that "While it is known that the inner walls of a work cylinder such as the cylinder of a gas engine, *may be hardened or tempered by rapid application of heat thereto as by a flame followed by quenching,* it is believed that applicant is the first to effect a tempering or hardening of the inner portion of a work cylinder combined with the production of a state of optimum autofrettage * * *." (Italics not quoted.)

The patent to Klopp relates to an apparatus for surface hardening of the inner wall of hollow bodies, including cylinders. The patentee places a cylinder to be hardened on a table "adapted to be lowered into a tank filled with hardening liquid," then "suitable burners are inserted from above into the" cylinder "to uniformly heat from below upwards the inner wall." When the inner wall is uniformly heated, the cylinder is lowered into a hardening liquid and its inner wall instantaneously cooled.

The patentee makes no reference to "autofrettage."

In rejecting the appealed claims, the Primary Examiner stated that the only way of determining whether there was any difference in the wall of a cylinder produced by the apparatus disclosed in the patent to Klopp and that produced by appellant's electro-magnetic induction coil was by comparing appellant's method with that carried out by the apparatus disclosed in the patent. After setting out those methods, the Primary Examiner said, among other things:

"Since the articles being treated by both the applicant and the patentee are subjected to exactly the same treatment, if they are the same before they are treated, they must be the same after they are treated * * *."

In its decision affirming the decision of the Primary Examiner, the Board of Appeals stated that, although the type of heating employed by appellant had many advantages over the flame-heating method disclosed in the patent to Klopp, the appealed claims were not limited to any specific type of heating means, and were, therefore, sufficiently broad to cover a cylinder having its inner layer hardened by the gas-flame apparatus disclosed in the patent to Klopp. The board then said:

"If the temperature used by Klopp is high enough to produce a hardening effect, it must necessarily cause the metal adjacent the bore of the cylinder to be placed under compression, that is, in a state of autofrettage. In other words, in hardening the inner surface of the cylinder, necessarily places the hardened part of the metal under initial compression. Viewed in this light, it is believed that the appealed claims are anticipated by this patent. Certain of the claims are limited to an article in which a state of optimum frettage exists. This feature is merely one of degree and not of patentable moment."

In a request for a rehearing, and for a reconsideration of the board's decision, counsel for appellant proposed an amendment to appealed claims 9, 10, and 11, to include therein a statement to the effect that the hardened inner layer of the cylinder was produced by electro-magnetic induction. In other words, what counsel proposed to do was to limit the product claims here involved by including therein the means by which the claimed product is produced.

The Board of Appeals held, however, that the amendments requested were material, and that, as claims incorporating such amendments had not been before the Primary Examiner, it would not consider the claims as amended. The board, accordingly, denied appellant's petition.

It is contended here by counsel for appellant that by the use of appellant's method, that is, the heating of the inner layer of a cylinder bore by electro-magnetic induction, a more uniform depth of hardening is obtained than by the use of flame heat; that appellant's method of quenching after heating is more desirable than that disclosed in the reference; and that, by the use of appellant's apparatus and method, optimum autofrettage is obtained.

The record contains certain affidavits, one by appellant, one by H. W. Russell (chief physicist of the Battelle Memorial Institute of Columbus, Ohio), and one by John P. Tarbox (attorney of record in the instant case).

According to his affidavit, each affiant was impressed by the process and apparatus used by appellant, and each was of opin-

ion that the results obtained by appellant were superior to those that could be obtained by the use of flame heat.

It may be that appellant's method of producing a hardened inner layer in a cylinder is superior to the flame-heat method disclosed in the reference. However, we are here concerned with a product, not with the apparatus or the method by which that product is produced.

It is apparent from the record that a hardened inner layer may be produced in a cylinder by the use of the flame-heat method disclosed in the patent to Klopp, and that a state of autofrettage will exist in such a cylinder. Accordingly, comparing appellant's method with that disclosed in the reference, it is evident that the difference in results, if any, is one of degree only. We are unable to hold, therefore, that the article defined in the appealed claims involves invention.

The appeal is dismissed as to claims 1 to 8, inclusive, and the decision of the Board of Appeals is affirmed as to claims 9, 10, and 11.

Affirmed.